SARTAIN, Judge.
Defendant, Dabbs, appeals from an adverse judgment in the District Court against him in the amount of $625.25, representing $525.25 as the cost of repairing a floor defectively installed by him and $100.00 for shame, inconvenience and humiliation sustained by plaintiff growing out of having such a defective floor in his family home.
Defendant contends that he was an employee of Juban Lumber Company, Inc., hereinafter called Juban and accordingly filed a third party petition against Juban claiming that any damages awarded to plaintiff, should be against Juban.
The trial judge in written reasons held that the floor was defectively installed, that the contractual liability was upon defendant Dabbs, who was an independent contractor and not an employee of third party-defendant, Juban. Plaintiff and Ju-ban have answered this appeal urging the correctness of the judgment rendered by the trial judge.
The record in this case indicates that the plaintiff desired to build a home, the construction of which ultimately reached the sum of $18,000.00. Before building the home, plaintiff consulted with friends, and neighbors and examined advertisements of Juban, who operates a building material business in Baton Rouge. In connection with his business, Juban offers to assist prospective homeowners with plans, specifications, estimates and interim financing. Plaintiff was impressed with Juban and accordingly obtained plans, specifications and estimates from him. The construction permit was taken out in plaintiff’s name, however, Juban handled all of the interim financing, endorsed plaintiff’s collateral construction mortgage, supplied all of the materials and recommended various subcontractors to plaintiff for the actual construction of the home. Juban controlled alt of the money loaned on the interim financing and distributed it to the subcontractors as the work progressed. Juban recommended the services of defendant Dabbs, for the installation of the flooring in plaintiff’s home.
Dabbs used material furnished by Juban, installed the flooring, and collected from Juban an amount equal to ten cents per running foot of flooring installed. Pie was paid regularly by Juban on Fridays for the preceding week’s work. Juban did not keep Dabbs on his regular employee payroll, nor did he withhold income taxes, or social security. Dabbs never questioned this manner of payment.
The evidence is clear that Juban exercised no control over Dabbs in the manner in which the latter installed the floor, nor did Juban prescribe or indicate the hours to be worked by Dabbs or the number of employees to be engaged by Dabbs in connection with the latter’s work.
*818 There is no question here concerning the trial judge’s finding that the floor was in fact defectively installed and that the plaintiff is entitled to receive the sums awarded to him in the district court. The sole and remaining issue is whether or not the plaintiff is entitled to recover against Dabbs, and whether or not Dabbs is entitled to substitute the third party, Juban, in his stead. More simply resolved, the question is whether or not Dabbs was an employee of Juban or an independent contractor.
In their briefs, plaintiff and Ju-ban contend that Dabbs may not proceed with this devolutive appeal since the same was taken in forma pauperis and the judgment was subsequently satisfied by Dabbs prior to execution thereon. This contention has no merit. If plaintiff and Juban had wished to traverse Dabbs’ affidavit of poverty, the proper procedure was by rule to show cause under LSA-C.C.P. Article 5184. They have n'ot done so and this matter cannot be considered here. The record before us clearly evidences Dabbs’ lack of means to continue on appeal with bond. If there has been a sudden windfall to defendant, there is no evidence of it before us. Accordingly, defendant Dabbs is entitled to proceed. Singleton v. First National Life Insurance Co., La. App., 157 So. 620.
Defendant urges that Juban was something more than a mere furnisher of materials. He contends that plaintiff’s contract was with Juban and that his only contract was a contract of employment in a master-servant relationship with Juban. He further argues that no contract existed between plaintiff and himself, and, therefore, there was no obligation on his part in favor of plaintiff assuring the latter of proper workmanship. In his brief defendant cites Oglesby v. Town of Winnfield, La.App., 27 So.2d 137, for the proposition that a principal is responsible for the acts of his agents committed within the scope of, the agency. Defendant does not point out whether the agents in the Oglesby case were servants or independent contractors. In the Oglesby case the court was there faced with the issue of whether or not the town council of Winnfield had given sufficient authority to its tree-cutting agents so as to make the town liable for the improper cutting of limbs from an oak tree on the property of the plaintiff. The cutting of the limbs was held an improper damage to the property, a tort, unprivileged because the act of authority was ultra vires with respect to the defendant’s charter. The court held the municipality liable because the tree cutters committed a tort within the scope of their employment. We find no language in the Oglesby case to indicate that the tree cutters themselves could not be ultimately liable.
It should be noted that the act upon which liability was created in the Oglesby case was an offense or quasi-offense. It is true that under the title, “Of Offenses and Quasi-Offenses” in the Revised Civil Code, masters and employers are answerable for the damage occasioned by the servants in the exercise or function in which they are employed. LSA-C.C. Article 2320. However, even under this article the servant is ultimately liable and a master may demand reimbursement from his servant for any amount paid by the master under his derivative liability. Williams v. Marionneaux, 240 La. 713, 124 So.2d 919.
Defendant urges that his contract was a mere contract of employment, governed by the section of our Civil Code dealing with laborers who hire their services to another person. LSA-C.C. Articles 2746, 2750. Accordingly he seeks to restrict his liability to that of his contract of employment which operates in favor of his alleged employer only. Furthermore, we presume that this line of argument is meant to be carried to the logical conclusion that Dabbs can have no liability with respect to his defective labor on plaintiff’s floor because he completed his obligation thereto as the servant of Juban under LSA- *819 C.C. Article 2750. However ingenious this argument may be, it cannot avail defendant here for the evidence clearly shows that Dabbs was an independent subcontractor whose contract was to install the floors in plaintiff’s house.
The facts which are important here to a determination of the character of the relationship which existed between Dabbs and Juban are not in basic dispute. Juban was a materialman who advertised a package deal for the prospective homeowner, which included everything from the initial design through the construction, including interim financing. Juban recommended the various subcontractors and furnished the materials. He remitted to the subcontractors a fixed fee for the work performed. In the instant case, it was ten cents a running foot for the installed floors. It was on a job basis and he exercised no supervision or control over the manner in which the work was done. He was interested in two factors, furnishing the material and the completed job. The manner in which the work was performed, the persons hired to assist, and the hours spent in completing the task were the sole concern of Dabbs.
An independent contractor has been defined as “one who renders services in the course of an occupation representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished.” 21 Words and Phrases, Perm. Ed. p. 255. Hartwig Moss Insurance Agency, Ltd. v. Board of Com’rs of Port of New Orleans, 206 La. 395, 19 So.2d 178. In Amyx v. Henry & Hall, 227 La. 364, 79 So.2d 483, 486, is contained the following :
“The term 'independent contractor’, as was said in the case of Gallaher v. Rick-etts, La.App., 187 So. 351, 355, ‘connotes a freedom of action and choice in respect of the undertaking and a legal responsibility on the part of the contractor in case the agreement is not fulfilled in accordance with its covenants.’ A con-tractee-independent contractor relationship presupposes a contract between the parties. It likewise presupposes the independent nature of his business, and is not exclusive as to the means whereby it is accomplished. It should appear that the contract calls for a specific piecework as a unit to be done according to his own methods, without being subject to the control and direction, in the performance of the service, of his employer, except as to the result of the services to be rendered. It must also appear that a specified price for the overall undertaking is agreed upon; that its duration is for a specified time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.
“It is well settled by our jurisprudence that besides other factors, the most important test in determining ‘whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer.’ It is also well settled that whether the employer ‘actually exercises control or supervision’ over the movements and the services rendered by the employee, such a fact is of no great moment, the ‘important question is whether, from the nature of the relationship, he had the right to do so.’ ”
The facts of this case clearly fall within the purview of the above authorities. See also Kamm v. Morgan, La.App., 157 So.2d 118; Dowling v. Mutual Life Insurance Co. of New York, La.App., 168 So.2d 107; Shelton v. Barber Brothers Co., La.App., 94 So.2d 489; Malloy v. Buckner-Harmon Wood Contractors, La.App., 100 So.2d 242.
For the above and foregoing reasons the judgment of the trial court is affirmed at appellant’s costs.
Affirmed.