252 So.2d 557 (1971)
James E. LEITHMAN
v.
DOLPHIN SWIMMING POOL CO., Inc.
No. 4294.
Court of Appeal of Louisiana, Fourth Circuit.
July 15, 1971.
Rehearing Denied October 6, 1971.
Writ Refused November 30, 1971.
Solomon S. Goldman, New Orleans, for plaintiff-appellant.
Fred P. Westenberger, New Orleans, for defendant-appellee.
Before CHASEZ, REDMANN and BOUTALL, JJ.
REDMANN, Judge.
Plaintiff appeals from a judgment which dismissed his main demand for damages for breach of a contract to build a swimming pool and granted defendant's reconvention for $300 unpaid balance of the contract price.
Plaintiff's complaint is that the dimensions of the kidney-shaped pool do not meet contract specifications. The main complaint is that the narrowest width of the pool is only 11' 6", a dimension smaller than any of the contract's dimensions of 16' × 14' × 32'.
A second complaint is that the lobes of the pool are 15' 9" and 13' 6" rather than 16' and 14'. Plaintiff produced testimony from a swimming pool contractor who found those measurements; defendant presented two contractors who measured the lobes as one inch larger than 16' and 14'. There are inherent difficulties in making these measurements which may account for the discrepancies and perhaps required a more expert measurer, such as a surveyor. The trial judge's conclusion that plaintiff did not adequately prove this allegation is also our conclusion.
The specific significance of the 16' × 14' × 32' dimensions, as explained by witnesses in the business, may be understood by comparing the ordinary bicycle's chain and two sprockets. The dimensions are the diameters of the two sprockets and the length between front of front sprocket and rear of rear sprocket. To persons in the business it is evident that the three stated dimensions do not fully state the shape of the pool. Just as a slack bicycle chain may be moved about without altering the size of the sprockets or their distance *558 apart, the sides of the kidney-shaped pool may be gradual or sharp curves (with larger or smaller radius), and may be a varying distance apart, without altering the diameters of the lobes or the length of the pool.
Thus, to defendant and others in the industry, an 11' 6" center width might not violate "specifications" of 16' × 14' × 32'. Defendant testified he could in fixing the sides have used a straight line between the lobes rather than an arc of finite radius, or "within good judgment" use an arc with as small a radius as he thought proper (thus reducing the between-lobes area to a relatively narrow width, perhaps only six or eight feet.)
The layman would not ordinarily be aware of this circumstance. A layman contracting for a pool of stated dimensions 16' × 14' × 32' may reasonably understand that no dimension will be smaller than the smallest stated dimension (except at the very ends past the lobe's diameter). Plaintiff's expert testified that a "basic pool" "stock plan" of a 16' × 14' × 32' pool would provide a 14' center width.
We interpret the measurements to limit the narrowest width of the pool (except at the very ends) to the smallest stated dimension of 14', construing the contract against defendant as obligor, C.C. art. 1957, and favorably to plaintiff because the "obscurity arise[s] for the want of necessary explanation which one of the parties [here defendant] ought to have given", art. 1958.
Defendant argues, however, that the contract's description of "modified kidney" shape indicated the side curving into the pool would extend further inward than usual to allow walkway space between the pool and a paved patio. Plaintiff's wife's testimony indicates she was under this impression. However, there was testimony from defendant's former employee who supervised this job that it was originally laid out to allow a 14' narrowest width, but after a heavy rain resulting in the caving in of the excavation's side wall it was relaid with a narrower width. And we note the width of 14' could have been maintained by moving both sides over an equal amount.
Plaintiff's wife testified they called defendant's office because of the after-cave-in shape "and asked then if this was correct and we were assured they were the experts and they knew what they were doing and everything was exactly according to contracts." Plaintiff testified to similar effect. Defendant denied having received this complaint, but he also denied stating to plaintiff's wife that he knew the pool wasn't what she and her husband wanted: "Even if it were so I wouldn't admit it. I mean, that just wouldn't be. I mean, here we are, we are trying to line this thing up amicably. I'm not going to tell them, gee this isn't what you want. The pool we delivered to them is what the contract calls for * * *."
We hold that the contract dimension called for a pool not narrower than 14' at its narrowest part, and that those dimensions were not reduced by simply referring to the shape as "modified kidney."
The lowest estimate in evidence for replacing the wall to provide the intended width of 14' is $1,691.19. Plaintiff still owes $300 of the original $3900 contract price.
The judgment appealed from is reversed as to both main and reconventional demands, and there is now judgment in favor of plaintiff and against defendant for $1391.19 with legal interest from judicial demand and for all costs.
Reversed and rendered.